An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1357

Filed: 4 August 2015

Beaufort County, No. 12 CVS 985

FAITH TYSON and DAVID TYSON, Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION and CENTURYLINK SALES SOLUTIONS, INC., Defendants.

Appeal by plaintiffs from order entered 20 May 2014 by Judge Kenneth C. Titus in Beaufort County Superior Court. Heard in the Court of Appeals 19 May 2015.

*Cauley Pridgen, PA, by Geneva L. Yourse and James P. Cauley, for Plaintiffs.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Dahr Joseph Tanoury, for Defendant North Carolina Department of Transportation.*

*Brown & Bunch, PLLC, by LeAnn Nease Brown, for Defendant CenturyLink Sales Solutions, Inc.*

STEPHENS, Judge.

*Factual Background*

Plaintiff Faith Tyson owns a fee simple interest, and her husband David Tyson has a marital interest, in two tracts of land ("the Property") located along U.S. Highway 17 North in Beaufort County. The Property lies on the west side of Highway 17 and consists of one 1.30-acre tract of land and one 3.29-acre tract that also includes

a house which faces the highway. Mrs. Tyson received her interest in the Property in 1998 from her mother, Agnes Hodges Williamson, who had received her own interest in 1980 from Mrs. Tyson's grandmother, Currie K. Hodges.

On 2 September 1953, Mrs. Hodges executed a Right-of-Way Agreement ("the 1953 Agreement") with the State Highway and Public Works Commission ("the Commission"), which was the predecessor in interest to Defendant North Carolina Department of Transportation ("NCDOT"). *See, e.g.*, *Dep't of Transp. v. Bollinger*, 121 N.C. App. 606, 608, 468 S.E.2d 796, 797 (1996). The Agreement, which conveyed to the Commission a right-of-way along the eastern edge of the Property's 3.29-acre tract in order to accommodate improvements to Highway 17, states that it grants a

> right-of-way for said highway project as hereinafter described and releases the Commission from all claims for damages by reason of said right-of-way across the lands of the undersigned and of the past and future use thereof by the Commission, its successors and assigns, for all purposes for which the Commission is authorized by law to subject such right-of-way . . . [.]

By the terms of the Agreement, which was recorded in the Beaufort County Registry on 5 January 1954, the right-of-way extends west 102 feet from the centerline of Highway 17 to form the eastern boundary of the Property, approximately ten feet away from the house's front porch. On 17 September 1955, Mrs. Hodges applied for and received permission from the Beaufort County Department of Health to install a

sewage disposal system for the house with a septic tank and drain lines extending from the right side of the house, outside the right-of-way.

On 26 August 2009, the Tysons executed a Deed for Highway Right of Way ("2009 Deed") conveying to NCDOT the right to impose partial control of access along the edge of both tracts of the Property adjacent to Highway 17 in order to install fencing. The control of access line runs congruent along the Property's eastern boundary with the right-of-way established by the 1953 Agreement. As consideration, NCDOT paid the Tysons $8,000.00 and provided two 60-foot access breaks to the highway to accommodate a driveway and path to the Property. In return, the Tysons affirmed that the project plans had been fully explained to them and released NCDOT "from any and all claims for damages resulting from the construction of said project or from the past, present or future use of said premises herein conveyed for any purpose for which [NCDOT] is authorized by law to subject the same."

NCDOT subsequently contracted with Defendant CenturyLink Sales Solutions, Inc., a private utility corporation, which in turn hired Lambert's Cable Splicing Company, LLC, as a subcontractor in conjunction with a broader construction project to improve the grading, drainage, and paving of Highway 17. The project's plans called for underground fiber optic telecommunications lines in the right-of-way along the highway adjacent to the Property to be relocated within the right-of-way and installed at least one foot inside the edge bordering the Property,

which the Lambert's crew used stakes to demarcate. After conducting a "locate request" which determined that no other underground utilities were located inside the right-of-way, the Lambert's crew followed the work plans supplied by NCDOT. However, on 7 February 2011 while utilizing a trencher to dig a trench inside the right-of-way, the Lambert's crew inadvertently severed a terracotta septic system drain line that appeared to lead to the Tysons's house on the Property. The Lambert's crew notified the Tysons of the incident shortly thereafter.

*Procedural History*

On 19 October 2012, the Tysons filed a complaint for inverse condemnation pursuant to section 136-111 of our General Statutes against NCDOT and CenturyLink in Beaufort County Superior Court. In their complaint, the Tysons alleged that NCDOT and CenturyLink had exceeded the right-of-way granted by the original 1953 Agreement by "cutting through septic lines on [the Property], parking heavy trucks and equipment on [the Property], destroying existing vegetation, and destroying portions of existing improvements" on the Property. The Tysons argued these actions "substantially and measurably impaired the value of" the Property and therefore amounted to a taking without just compensation.

On 27 December 2012, NCDOT filed its answer, denying that it had exceeded the right-of-way or that any taking had occurred, and asserting further that the Tysons's claim was barred because the 2009 Deed had released NCDOT from any

liability for damages related to highway construction. On 7 January 2013, pursuant to North Carolina Rules of Civil Procedure 12(b)(4) and 12(b)(6), CenturyLink filed a motion to dismiss the Tysons's complaint. The trial court denied that motion by written order on 18 December 2013, and CenturyLink filed its answer on 23 December 2013.

In January 2014, both the Tysons and NCDOT filed motions pursuant to section 136-108 of our General Statutes for a hearing to determine whether a taking had occurred. On 25 and 26 February 2014, NCDOT and CenturyLink respectively filed separate Rule 56 motions for summary judgment against the Tysons. Included in support of these motions were maps and surveys of the right-of-way in relation to the Property, as well as affidavits from: (a) a professional land surveyor who performed a survey demonstrating that the relocated fiber optic lines were buried inside NCDOT's existing right-of-way and control-of-access lines at an average distance of 2.35 feet from their border with the Property; and (b) members of the Lambert's crew who explained that all workers and equipment had remained within the right-of-way at all times, that there was no evidence of a private septic drain line in the area before the work began, that a "locate request" focuses only on underground utilities and would not have uncovered such a line, and that based on their experience in the field, they would not have expected to find such a line in a public right-of-way. In addition, CenturyLink submitted a memorandum in support of its motion

highlighting Mrs. Tyson's deposition testimony that she had not known the septic line was located in the right-of-way but believed it was first installed in 1955, that she did not know precisely where the boundary between the Property and NCDOT's right-of-way was located, that she only observed the Lambert's crew and its equipment operating between the control-of-access fence and the highway in an area she recognized as part of NCDOT's right-of-way, and that apart from cutting the septic line she was unaware of any other action by either NCDOT or CenturyLink that could have damaged the Property.

On 5 May 2014, after the Tysons filed a cross-motion for summary judgment, a hearing was held on the motions in Beaufort County Superior Court. During that hearing, the Tysons argued that neither the original 1953 Agreement nor the 2009 Deed had relinquished their fee simple interest in the Property or restricted their right "to place a septic line or a drain field underground or to use the area underneath the right-of-way in any way that they chose as long as it didn't interfere" with the specific uses and construction projects recited in those instruments. Instead, the Tysons contended that, by relocating the underground fiber optic lines, NCDOT had exceeded the scope of its rights under both the Agreement and the Deed because:

> It's not the same project they were doing before. It's not the same use they were doing. It's not the same purpose that they had here. It's an overburdening of the easement. They had a right over and across the lands. When they went and they started digging down to put in fiber-optic cables, which they weren't doing when they originally got this

easement, they exceeded the easement that was there; they
went beyond the burden.

At the close of the hearing, the trial court expressed its sympathy for the Tysons,

noting that "[s]ometimes the law is just not fair," but denied their motion for

summary judgment and instead granted the motions for summary judgment filed by

NCDOT and CenturyLink. In a written order entered 20 May 2014, the court

explained that

> there is no genuine issue of material fact and as a matter
> of law, the [1953] Right-of-Way Agreement . . . grants unto
> [the Commission], its successor and assigns, all right of
> past and future use for all purposes for which the
> Commission is authorized by law to subject such right-of-
> way, including the location and relocation of utilities, a use
> to which [NCDOT], successor-in-interest to [the
> Commission], is authorized by law to subject [such] right-
> of-way[.]

The court also dismissed the Tysons's complaint with prejudice. The Tysons gave

notice of appeal to this Court on 13 June 2014.

*Analysis*

The Tysons's sole argument on appeal is that the trial court erred by granting

NCDOT's and CenturyLink's motions for summary judgment. We disagree.

We review *de novo* a trial court's decision to grant or deny a motion for

summary judgment, focusing on

> whether there is any genuine issue of material fact and
> whether the moving party is entitled to a judgment as a
> matter of law. Summary judgment is proper if the

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

*Hyatt v. Mini Storage on Green*, __ N.C. App. __, __, 763 S.E.2d 166, 169 (2014) (citations and internal quotation marks omitted).

In the present case, the Tysons argue first that the trial court erred in granting summary judgment for NCDOT and CenturyLink because by digging a trench to relocate the underground fiber optic lines, they exceeded the scope and specific purposes allowed by the 1953 Agreement and the 2009 Deed. Specifically, the Tysons emphasize the use of the phrase "across the lands of the undersigned" in the 1953 Agreement, which they contend limits NCDOT's right-of-way to the surface of the Property. According to the Tysons, this means that their predecessors-in-interest retained exclusive rights to the soil beneath the right-of-way and were therefore free to bury the septic line there. The Tysons thus insist that digging to relocate fiber optic lines violated the terms of the right-of-way grant, and that neither the 1953 Agreement nor the 2009 Deed released NCDOT from liability for damages caused by any actions other than the construction projects explicitly referenced in those instruments, which means that the Lambert's crew overburdened the right-of-way, causing damages for which the Tysons insist they are entitled to compensation. In support of this argument, the Tysons rely on our Supreme Court's decisions in *Hildebrand v. S. Bell Tel. & Tel. Co.*, 219 N.C. 402, 14 S.E.2d 252 (1941) ("*Hildebrand*

*I*") and *Hildebrand v. S. Bell Tel. & Tel. Co.*, 221 N.C. 10, 18 S.E.2d 827 (1942) ("*Hildebrand II*").

In *Hildebrand I*, the plaintiff landowner sued to restrain the defendant telephone company and to recover damages for trespass after the telephone company "dug holes and erected poles and wires upon the land of [the] plaintiff . . . ." 219 N.C. at 404, 14 S.E.2d at 254. The Commission had previously obtained a right-of-way across a portion of the plaintiff's property that bordered a public highway, and the defendant telephone company argued that because its use of the right-of-way to erect poles and wires had been authorized by the Commission, its construction project "imposed no new or additional burden" on the plaintiff's land. *Id.* at 405, 14 S.E.2d at 254. In reviewing the plaintiff's argument to the contrary, our Supreme Court observed that under North Carolina law, the Commission

> has authority to control the uses to which the land embraced within [a right-of-way it obtained along a public highway] may be put. If it deems it wise or expedient so to do in the interest of the traveling public, it may altogether exclude the imposition of any additional easement or burden. It may not be held that the Legislature intended thereby to declare that the construction and maintenance of a telephone line is a legitimate highway purpose and embraced within the easement acquired for highway use.

*Id.* at 409, 14 S.E.2d at 257. As the Court recognized, although North Carolina law authorized the Commission to utilize its right-of-way over the plaintiff's property to do whatever it deemed necessary to facilitate public travel, granting permission to

the defendant telephone company to set up poles in the right-of-way "is outside the scope of the public easement and compensation must be made therefor." *Id.* (citations omitted). However, the Court ultimately remanded the case for a new trial because the court below had improperly excluded the findings and holdings contained in the judgment roll of the condemnation proceeding by which the Commission obtained the right-of-way. *Id.* at 411, 14 S.E.2d at 258.

In *Hildebrand II*, after the retrial ended in a judgment for the plaintiff, our Supreme Court observed first that the

> Commission has been granted exclusive control over the State Highway system. It has full authority to make proper and reasonable rules, regulations and ordinances for the placing or erection of telephone, telegraph or other poles within the right of way and it may, at any time, require the removal of, change in, or relocation of any such poles. That said Commission may in its discretion authorize the use of the highway right of way by telephone and telegraph companies is not seriously debated. This authority, however, is subject to the right of the owner of the servient estate to payment for the additional burden.

221 N.C. at 13, 18 S.E.2d at 829 (citations omitted). After reviewing the language of the grant of right-of-way in the judgment roll, the Court held that the plaintiff had already been paid for use of the right-of-way for other utilities, such as the defendant telephone company, because the grant to the Commission and its successors-in-interest was not restricted merely to "highway purposes" but extended to "all purposes for which [the Commission] is authorized by law to subject said right of

way," which meant that the defendant telephone company "by virtue of its privity, may assert the authority of [the Commission] thereunder to permit it to encroach upon the highway without any payment of any additional sum to [the] plaintiff." *Id.* Thus, given the breadth of the right-of-way grant, the Court concluded the plaintiff was not entitled to further compensation and thus the defendant telephone company's motion to dismiss the action should have been granted below. *See id.* at 14, 18 S.E.2d at 830.

It has been clear since 1942 that if the granting instrument so provides, NCDOT and its assignees can utilize public highway rights-of-way for any purpose authorized by law. Therefore, while we agree with the Tysons that *Hildebrand I* and *II* control the result of this case, we also conclude that the result these authorities compel is the opposite of the result the Tysons seek. Although they claim that the scope of NCDOT's right-of-way is restricted by the use of the phrase "across the lands" in the 1953 Agreement, and by the projects specifically referenced in both that Agreement and the 2009 Deed, their argument is fatally undermined by the actual language of the 1953 Agreement, which clearly releases NCDOT from liability for any past or future damages resulting from "*all purposes* for which [NCDOT] is authorized by law to subject such right of way . . ." (emphasis added). Thus here, as in *Hildebrand*, the right-of-way grant provides broad authorization for NCDOT's use in accordance with North Carolina law. Moreover, section 136-18 of our General

Statutes vests NCDOT with the power to "make proper and reasonable rules, regulations and ordinances for the placing or erection of telephone, telegraph, electric and other lines, above or below ground," and for removal of or changes in their locations. N.C. Gen. Stat. § 136-18(10) (2013). Consequently, we have no trouble in concluding that relocating the fiber optic lines within the right-of-way was a purpose "authorized by law" for which NCDOT could lawfully utilize its right-of-way. Thus, as in *Hildebrand II*, the breadth of the 1953 Agreement's terms compels our conclusion that the actions of NCDOT, CenturyLink, and their subcontractors neither overburdened nor exceeded the scope of the right-of-way.

Alternatively, the Tysons argue that the trial court erred in granting summary judgment for NCDOT and CenturyLink because their actions in the right-of-way caused such significant damage to the Tysons's abutting estate as to amount to an additional taking for which the Tysons are entitled to just compensation. In support of their position, the Tysons rely on this Court's prior decision in *Robinson v. N.C. Dep't of Transp.*, 89 N.C. App. 572, 366 S.E.2d 492 (1988). In *Robinson*, we reversed the trial court's dismissal of an action for inverse condemnation against NCDOT and its subcontractor after the plaintiff landowners' property was damaged by vibrations from a pile-driver the subcontractors used on an adjacent bridge construction project along a public highway. 89 N.C. at 573, 366 S.E.2d at 493. In holding that the plaintiffs could state a claim for inverse condemnation, we observed that "[a]lthough

[the] plaintiffs' property damage caused by the bridge construction does not fit squarely within the . . . definition of a taking, North Carolina courts have consistently held that such damage does, in fact, constitute a taking" because "[d]amage to land which inevitably or necessarily flows from a public construction project results in an appropriation of land for public use." *Id.* at 574, 366 S.E.2d at 493 (citations and internal quotation marks omitted).

Here, although the Tysons insist their situation is analogous, their argument ignores a critical distinction between *Robinson* and the instant facts. Namely, in *Robinson*, the damages to the plaintiffs' property resulted entirely from the construction project on the neighboring highway, whereas in the present case, the damages the Tysons suffered resulted directly from their own septic line's unauthorized encroachment into NCDOT's right-of-way. While the record indicates that Mrs. Hodges obtained permission to place a septic system on the Property in 1955, the plans she submitted clearly called for the drain lines to extend out from the side of the house, rather than in front of it into NCDOT's right-of-way, which as noted *supra* included not only the surface of the land but also the soil beneath it. Put simply, the septic line should never have been in a position for the Lambert's crew to sever on 7 February 2011.

Moreover, as our State's courts have long recognized, "[w]here a landowner has granted a right of way over his land, he must look to his contract for compensation,

as it cannot be awarded to him in condemnation proceedings, provided the contract is valid, and all its conditions have been complied with by the grantee." *Sale v. State Highway & Pub. Works Comm'n*, 238 N.C. 599, 604, 78 S.E.2d 724, 728 (1953) (citations omitted); *see also Ingram v. City of Hickory*, 191 N.C. 48, 53, 131 S.E. 270, 273 (1926) (observing that a right-of-way deed bars "all claim for damages incidental to or necessary, incurred in the exercise of the power conferred by the deed."). Here, by and through the 1953 Agreement and the 2009 Deed, NCDOT and its predecessor-in-interest have already compensated the Tysons and their predecessors-in-interest for the right-of-way, which NCDOT is authorized to use for any lawful purpose, including relocating underground fiber optic lines, which means the Tysons are not entitled to additional compensation for damages arising from their septic line's unauthorized encroachment into the right-of-way.

We therefore hold that the trial court did not err in granting summary judgment to NCDOT and CenturyLink. Accordingly, the trial court's order is

AFFIRMED.

Judges BRYANT and DIETZ concur.

Report per Rule 30(e).